Filed 3/17/21  Acuna v. Smart & Final Stores CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LETICIA ACUNA et al., | B293470 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. BC547645 |
| SMART & FINAL STORES LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

Gary Rand & Suzanne E. Rand-Lewis and Suzanne E. Rand-Lewis for Plaintiffs and Appellants.

Jackson Lewis, Theresa M. Marchlewski, Ellen E. Cohen and Dylan B. Carp for Defendants and Respondents.

## INTRODUCTION

Five plaintiffs jointly sued their employer Smart & Final Stores LLC (S&F) and the assistant manager of the store where they worked, Leslie Kirst, for discrimination, harassment, and retaliation in violation of Government Code section 12900 et seq. (FEHA), and other employment-related causes of action. The litigation was contentious and involved many discovery disputes.

Ultimately, the trial court granted defendants' motion for summary adjudication of issues under section 437c of the Code of Civil Procedure (section 437c), and plaintiffs dismissed their remaining causes of action. Earlier, the court had granted plaintiffs' request to continue the hearing and motion to compel depositions. Plaintiffs' counsel halted the depositions before completing them, however, citing defendants' counsel's bad behavior, and again asked the court to continue or deny defendants' motion. The court declined, finding it was plaintiffs' counsel who had acted in bad faith.

On appeal, plaintiffs primarily contend the trial court erred when it did not continue or deny defendants' motion under section 437c, subdivision (h) or (i) (section 437c(h) or (i)) for obstructing discovery; defendants' separate statement of undisputed facts was deficient and failed to demonstrate plaintiffs could not establish their claims; and plaintiffs raised triable issues of fact. They also contest the court's earlier sustaining of defendants' demurrer to four causes of action. Finding no prejudicial error, we affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

"Because this case comes before us after the trial court granted a motion for summary [adjudication], we take the facts from the record that was before the trial court when it ruled on that motion." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th

1028, 1037 (*Yanowitz*).)  In accordance with our standard of review, "[w]e liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."  (*Ibid.*)

1.    ***Plaintiffs' employment***

S&F hired Leticia Acuna, Brett Basler, Leticia Berganza, Rodrigo Gerber, and Arlene Ibal (collectively, plaintiffs) at different times as part-time employees at various stores.  Acuna, Berganza, and Ibal are female.  Acuna and Berganza describe themselves as Hispanic, and Berganza referred to Ibal as Hispanic.  Basler and Gerber are male.  Basler identifies as White, and Gerber describes his national origin as half Mexican and half White.

In connection with their S&F employment applications, each plaintiff signed a form acknowledging he or she had read and understood the form's statements, including that the employee's "employment relationship" with S&F was "of an 'at will' nature."  By signing, each plaintiff also acknowledged, "I understand that nothing contained in this application or the interview process is intended to create a contract between the Company and myself for either continued employment or for the providing of benefits."

Plaintiffs eventually worked together at S&F store 437 in Palmdale under Kirst's supervision.  Allen Robinson was the store manager.

2.    ***Kirst's management of store 437 and interactions with plaintiffs***

Kirst was the senior assistant store manager from the time store 437 opened on April 14, 2009 until August 24, 2012.  Store 437 opened after stores in Palmdale (where Kirst had worked)

3

and Lancaster closed and merged.  Kirst primarily prepared the schedules for the store staff.  She understood the employees from the two closed stores were given the opportunity to transfer to store 437.  She declared she had more employees at store 437 to schedule than she had when she worked at her previous store.

After plaintiffs began working at store 437, they received fewer weekly work hours.  Plaintiffs testified Kirst played "favorites" when scheduling hours and giving opportunities or promotions.  Kirst "mainly" favored "young good-looking men," but also had favorite female employees.

Employees who were friendly with Kirst, did her favors, or "kissed ass" got more hours.  Plaintiffs also testified their hours were cut after they complained about their schedules or Kirst yelling at them.

According to Gerber, "[h]alf the store didn't really like [Kirst]."  He described her as "very rude like she was even better than everybody."  She generally was rude to everyone, "except some people that she favored."  Basler also described Kirst as "rude to everybody."

Plaintiffs testified or declared Kirst: yelled at and talked down to them about their work performance; made sexual comments, talked about sex, grabbed male employees' "buttocks," and pinched and slapped Berganza and Acuna each on the "butt" one time; made derogatory comments about religion, the military, Acuna's and Berganza's Spanish accents, and Hispanics;[1] spoke negatively about her daughter's Mexican boyfriend; and told employees not to speak Spanish at work.

[1]     We use the term "Hispanic" because that is the term plaintiffs used in their depositions.

4

### 3. *Plaintiffs' group complaint to S&F*

Plaintiffs and three other employees signed a written complaint about Kirst and Robinson, dated August 20, 2012, that Ibal and Gerber faxed to Sean Mahony, an S&F vice president. Cindy Castro, a human resources manager, received the fax. The complaint stated, "[W]e are very dissatisfied with our unequal treatment by Leslie Kirst.  Many of us have been discriminated against, treated unfairly, harassed, dealt with the inequality in the distribution of hours given, her unfair promotions towards others, and her constant criticisms by her part."  The complainants also stated they were "dealing with [an] unfair and hostile working environment," and that human resources and Robinson had done nothing to resolve the issues.

On August 27, 2012, Kirst was transferred to a different S&F store.  Castro and fellow S&F human resources manager Sharon Quigley went to store 437 to investigate the complaint. Between the two of them, they interviewed plaintiffs and others on September 13, 2012, and October 9, 2012.

Gerber, Acuna, Berganza, and Ibal testified their work conditions improved after Kirst's transfer.  Berganza was promoted in December 2012.  Basler took military leave in mid-October 2012.  He sought to return to store 437 in April 2013, but S&F did not call him in to work.

### 4. *Plaintiffs' complaints to DFEH*

On July 26, 2013, plaintiffs filed complaints of discrimination with the Department of Fair Employment and Housing (DFEH) and received immediate right-to-sue authorizations.  Each DFEH complaint alleged the plaintiff experienced "Discrimination, Harassment, Retaliation" because of his or her "Sex-Gender, Other Retaliation," and as a result

was "Denied a work environment free of discrimination and/or retaliation, Other Retaliation for requesting protection from harassment and hostile work environment and any and all basis under the law."

**5.      *Plaintiffs sue S&F and Kirst***

On June 6, 2014, plaintiffs jointly filed their original complaint against S&F and Kirst.  Plaintiffs' 99-page operative fourth amended complaint (FAC)—filed on March 8, 2016, after several demurrers—alleges 10 causes of action, nine of which are relevant: breach of contract and breach of the covenant of good faith and fair dealing against S&F; intentional infliction of emotional distress against both defendants; discrimination and retaliation in violation of FEHA against S&F and harassment in violation of FEHA against both defendants; violation of Military and Veterans Code section 394 by Basler only against both defendants; and violation of Labor Code section 512 and Wage Order 2-2001 for failure to provide rest breaks and meal periods, and Labor Code section 1198.5 for failure to provide personnel records against S&F.

Earlier, the trial court had sustained without leave to amend defendants' demurrer to causes of action alleged in the second amended complaint (SAC) for wrongful conduct in violation of public policy, fraud, negligent misrepresentation, and concealment.

Generally, plaintiffs' FAC alleges Kirst created a "hostile and harassing work environment" by verbally abusing them; making overt sexual comments and inappropriately touching male employees; making derogatory comments about religion; telling employees they could not speak Spanish at work and yelling at them if they did; and making derogatory comments

6

about military service.  Plaintiffs also alleged Kirst discriminated and retaliated against them by cutting their work hours while giving more hours to employees who were her "friends," and by not offering them open positions that she gave to her "friends."

In March 2016, defendants filed a motion for summary judgment or, in the alternative, summary adjudication of issues. After defendants answered the FAC in April 2016, plaintiffs served deposition notices with requests for production of documents for the person most knowledgeable (PMK) at S&F, Kirst, S&F management personnel Ginny Diaz, Castro, and Quigley, and defense counsel.  Defendants objected on various grounds.

Plaintiffs then opposed the summary judgment motion primarily on the ground defendants had prevented them from obtaining facts essential to their opposition by refusing to produce witnesses and related documents for those depositions, requiring the court to deny or continue the motion under sections 437c(h) and (i).  On June 24, 2016, the trial court continued defendants' motion and granted plaintiffs' motion to compel.  The court ordered the depositions to take place on July 7, 8, and 9, 2016.  The court vacated the trial and final status conference dates and set a trial setting conference for September 30, 2016.

Another discovery dispute erupted.  This time, defendants' witnesses appeared for their depositions, but plaintiffs' counsel suspended two of them—Kirst's and Castro's—and ordered defendants' counsel to leave her office, so Diaz's deposition could not proceed.  Plaintiffs' counsel deposed Quigley and another witness, but reserved her "right" to reconvene them.

Both counsel accused the other of acting improperly during the depositions.  Plaintiffs moved for sanctions and an order to

compel the depositions to take place in the court's jury room before a discovery referee. Plaintiffs based the motion on earlier litigated discovery issues, defense counsel's alleged "[p]hysical aggression" during the depositions, and defendants' alleged delay in producing relevant documents. Plaintiffs' counsel declared defendants' counsel reached across the table to grab documents from her and made improper objections.

On August 8, 2016, the court heard plaintiffs' motion. The court found defense counsel's grabbing of documents was "no reason to adjourn a deposition." The court chastised plaintiffs' counsel: "You had a chance and opted to prematurely suspend the deposition." Based on its reading of the deposition transcripts, the court concluded plaintiffs' counsel's "suspending the deposition[s] summarily" "was done in bad faith." Finding no "basis to reconvene any of the[ ] depositions," the court denied plaintiffs' motion.

Plaintiffs filed their second opposition to defendants' motion on October 24, 2016. Plaintiffs again primarily based their opposition on sections 437c(h) and (i). They argued the trial court should deny or continue the motion because they were unable to obtain necessary facts and evidence. Plaintiffs claimed they needed to reconvene the July depositions, and defendants had refused to produce witnesses or documents in response to a second set of six depositions plaintiffs' counsel noticed on July 18 to take place August 2 and 3. Plaintiffs also argued that defendants' "lack of evidence" motion—which relied on plaintiffs' deposition testimony—failed to establish plaintiffs' "unequivocal" lack of proof of their claims and inability to obtain proof; and that defendants' separate statement was defective, containing "only legal conclusions, hearsay statements and argument."

Plaintiffs' opposing separate statement disputed every one of defendants' proposed undisputed facts, citing the same evidence for each. Plaintiffs filed evidentiary objections to defendants' declarations and attached exhibits.

In reply, defendants argued plaintiffs' separate statement failed to create a triable issue of material fact. They argued plaintiffs' cited evidence "merely" reiterated the complaint's allegations and contained "vague, factual and legal conclusions," not admissible evidence. Nor did plaintiffs establish their declarations were based on their personal knowledge. Defendants filed 102 evidentiary objections to plaintiffs' and their counsel's declarations. Defendants also argued plaintiffs' separate statement did not comply with California Rules of Court, rule 3.1350: they failed to explain why the facts were disputed and cited to paragraphs in their declarations instead of specific page and line numbers.

The trial court heard defendants' motion—which they clarified was for summary adjudication—on November 7, 2016. The court noted it already had given plaintiffs the opportunity to take additional discovery. As the undisputed facts were based on plaintiffs' own deposition testimony, the court did not think additional discovery would assist them in demonstrating those facts were in dispute. The court found plaintiffs had not sufficiently specified how additional discovery would help them oppose the motion.

The court also found defendants' separate statement sufficient under the rules[2] and Code of Civil Procedure. It

---

[2] All references to rules are to the California Rules of Court.

9

concluded there was a basis for defendants' motion, they articulated their legal position, and the issues were set forth properly and supported by competent evidence. The court found plaintiffs' opposing separate statement, however, was not compliant. The court ruled that, even if it were to allow plaintiffs to submit a new one, "each of [plaintiffs'] declarations [is] defective and none of them even contain[s], for the most part, the material that counsel indicates would dispute these issues. So the separate statement is as if I did not get an opposing separate statement at all." The court then granted the motion for summary adjudication on each cause of action listed above on specified grounds. The court also overruled all of plaintiffs' evidentiary objections.

Judgment was entered for defendants after plaintiffs dismissed their remaining causes of action. Plaintiffs timely appealed.[3]

## DISCUSSION

Plaintiffs assert several grounds—both procedural and substantive—that they contend required the trial court to deny defendants' motion for summary adjudication. Plaintiffs also contend the court improperly sustained defendants' demurrer to their SAC. We review the trial court's decisions to grant defendants' motion and to sustain their demurrer de novo (*Yanowitz, supra*, 36 Cal.4th at p. 1037; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415), but review plaintiffs' claimed procedural errors for abuse of discretion (e.g., *Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038 (*Rodriguez*)).

---

[3]     Plaintiffs filed a joint opening brief but no reply brief.

10

Our de novo review does not absolve plaintiffs of their burden to show error, however. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*) [judgment is presumed correct]; *Abdulkadhim v. Wu* (2020) 53 Cal.App.5th 298, 301 (*Abdulkadhim*).) " ' "As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed." ' " (*Abdulkadhim*, at p. 301; *Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 384 [declining "[t]acit[ ]" invitation to "comb through the record in search of error"].)

1. ***The court did not abuse its discretion when it refused to deny or continue the motion for discovery abuse***

The statutory scheme governing summary judgment includes safeguards to permit the opposing party to take more discovery to obtain facts needed to oppose the motion. (§ 437c(h).) Upon a proper showing by affidavits, the court must order a continuance to allow time for the additional discovery, deny the motion, or "make any other order as may be just." (*Ibid.*)

The required affidavits must show: (1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe those facts may exist; and (3) the reason more time is needed to obtain these facts. (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715.) "The party seeking the continuance must justify the need, by detailing both the particular essential facts that may exist and the specific reasons why they cannot then be presented." (*Id.* at p. 716.)

11

The determination whether to grant the request is vested in the trial court's discretion and will not be disturbed on appeal unless an abuse of discretion appears. (*Rodriguez, supra*, 212 Cal.App.4th at p. 1038.) "[T]he court may properly consider the extent to which the requesting party's failure to secure the contemplated evidence more seasonably results from a lack of diligence on his part." (*Ibid.*) "The statute does not provide for an unlimited number of continuances." (*Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 547.)

Plaintiffs contend the trial court abused its discretion because their counsel provided the required summary of facts and evidence essential to their opposition, through declaration and oral argument, and established defendants purposefully obstructed discovery of those necessary facts and evidence. We do not agree.

First, the trial court already had continued the motion to allow plaintiffs to take the depositions of Kirst, Castro, Quigley, Diaz, and another employee. Plaintiffs' counsel squandered that opportunity by suspending two depositions, preventing a third by ordering counsel to leave the office, and concluding two others despite apparently having more questions for the witnesses. Yet, plaintiffs again contended they were entitled to take those depositions, ignoring the court's earlier explicit ruling that plaintiffs' counsel had acted in bad faith and provided no basis to reconvene any of the depositions. Thus, plaintiffs' inability to discover the facts they claimed they needed from those witnesses was the result of their own delay when they opted to terminate the depositions.

Plaintiffs also argued defendants prevented them from obtaining facts and evidence through the new depositions they

12

had noticed, with document requests, to take place in early August 2016.[4]  Defendants' counsel objected to those deposition notices and refused to produce the witnesses and documents because the original discovery cut-off date of July 5, 2016, had passed.  Plaintiffs' counsel argued the court's vacation of the trial date eliminated the discovery cut-off date.

The trial court found plaintiffs did not set forth with sufficient particularity the essential facts they would obtain from these new depositions and how they would help plaintiffs demonstrate triable issues of fact.  Plaintiffs' attorney declared the testimony and documents,

> "will establish the hostile work environment in which Plaintiffs were required to work, reports to Defendant[s] regarding the issues and Defendant[s'] failure to investigate, in addition to the harassment, discrimination and retaliation Plaintiffs faced, and Defendants['] failure to properly investigate and resolve same. . . .  This testimony is crucial to Plaintiffs' opposition as it will create triable issues of material fact by contradicting Defendants' assertion that Plaintiffs were not subject to harassment, discrimination, retaliation, or a hostile work environment."

---

[4]     Plaintiffs noticed the depositions of five of Kirst's supervisors/directors (including Robinson, Mahony, and Jeff Bloks), a male employee Kirst allegedly sexually harassed (plaintiffs' coworker), and a second PMK.

13

We agree with the trial court that plaintiffs did not sufficiently describe *the particular essential facts* they believed they would obtain from this discovery. Instead, plaintiffs described *the conclusions* they hoped to prove—that they were subject to harassment, discrimination, retaliation, and a hostile work environment. Although plaintiffs refer to some facts—e.g., reports to S&F about their work environment—the declaration fails to explain how those facts are necessary to oppose defendants' motion. Plaintiffs know what they reported to S&F, and the motion included plaintiffs' deposition testimony on that subject.

Nor did plaintiffs establish defendants' objections were improper. Under Code of Civil Procedure section 2024.020, discovery must be completed by the 30th day "before the date *initially set* for the trial of the action." (Code Civ. Proc., § 2024.020, subd. (a), italics added.) A "continuance or postponement of the trial date" does not reopen discovery proceedings. (*Id.*, § 2024.020, subd. (b).) On a party's motion, the court "may grant leave to complete discovery proceedings, or to have a motion concerning discovery heard, closer to the initial trial date, or to reopen discovery after a new trial date has been set." (*Id.*, § 2024.050, subd. (a).)

Here, the original discovery cut-off date was July 5, 2016. On June 24, the court vacated the initial August 2016 trial date to accommodate the depositions it ordered take place on July 7-9 and the continued hearing on defendants' motion. But the court did not vacate the discovery cut-off date nor say plaintiffs could conduct additional discovery beyond that date. And, on August 8 when the court denied plaintiffs' motion to compel the depositions that had been scheduled for July 7-9, it did not grant them leave

14

to conduct depositions of other witnesses. Nor did plaintiffs move the court for leave to reopen discovery.

Moreover, plaintiffs had until late October 2016 to file their second opposition to defendants' motion. Yet, they never moved to compel the August 2016 depositions, nor did they seek clarification from the court about the discovery cut-off date. Thus, plaintiffs' failure to obtain this discovery resulted from their own lack of diligence.[5]

Plaintiffs' earlier bad faith tactics, delay, and failure to justify any need for the discovery with sufficient affidavits support the court's exercise of discretion to refuse to deny or continue defendants' motion under section 437c(h). Plaintiffs did not establish good cause for a second continuance.

Plaintiffs' motion to continue under section 437c(i) was groundless as well. Under that statute, "[i]f, after granting a continuance to allow specific additional discovery, the court determines that the party seeking summary judgment has unreasonably failed to allow the discovery to be conducted, the court shall grant a continuance to permit the discovery to go forward or deny the motion." (§ 437c(i).) It was plaintiffs' own bad faith conduct in terminating the depositions that left them unable to conduct the depositions the court had ordered after it continued the motion.

---

[5] Indeed, plaintiffs were aware of most of these witnesses long before July 2016. Gerber testified he saw Kirst grab his coworker's "butt"; Berganza testified Bloks was her supervisor; Robinson is named in the FAC; and plaintiffs sent their August 2012 complaint to Mahony.

15

**2.    *The trial court did not abuse its discretion in finding
       defendants' separate statement sufficient***

   a.    *Defendants' separate statement complied with
          the Code of Civil Procedure and rules but
          plaintiffs' statement did not*

A party moving for summary adjudication must "include
a separate statement setting forth plainly and concisely all
material facts that the moving party contends are undisputed,"
with references to the evidence supporting each stated fact.
(§ 437c, subd. (b)(1).)  The opposing party, in turn, must "include
a separate statement that responds to each of the material facts
contended by the moving party to be undisputed, indicating
if the opposing party agrees or disagrees that those facts are
undisputed."  ((§ 437c, subd. (b)(3).)  For each disputed fact,
the separate statement must include a reference to the evidence
supporting the opposing party's contention that the fact is
disputed.  (*Ibid.*)  Rule 3.1350(f)(2) requires, when the opposing
party "contends that a fact is disputed," the separate statement
"must state . . . the nature of the dispute and describe the
evidence that supports the position that the fact is controverted."
"Failure to comply with this requirement . . . may constitute
a sufficient ground, in the court's discretion, for granting the
motion."  (§ 437c, subd. (b)(3).)  Rule 3.1350 also requires the
parties' citation to evidence in support of each material fact
or position that a fact is controverted "include reference to the
exhibit, title, page, and line numbers."  (Rule 3.1350(d)(3), (f)(2),
(f)(3).)

Plaintiffs contend the trial court's "failure to strictly
construe [defendants'] moving papers, and refusal to require
[defendants] to cite page and line numbers in their separate

16

statement while ruling that [plaintiffs'] separate statement did not comply" with the rules requires us to reverse. We disagree.

Plaintiffs assert defendants' separate statement contained the same defect as theirs—a failure to cite to page and line numbers of exhibits. Plaintiffs are correct that defendants referenced paragraph numbers, instead of page and line numbers, in the declarations they cited as evidence of certain material facts. That deficiency, however, does not compare to plaintiffs' failure to refer to page and line numbers in their declarations.

Plaintiffs disputed every fact in defendants' separate statement. They cited the same three items of evidence to support their contention that each fact was controverted: paragraphs 2 through 4 of the relevant plaintiff's declaration, paragraphs 3 and 4 of plaintiffs' counsel's declaration, and "Exhibit 'A,'" the collection of each plaintiff's supplemental responses to S&F's form employment interrogatories. Thus, for example, plaintiffs asserted the same evidence that controverted defendants' stated fact that Basler "is male" also supported plaintiffs' contention that "Kirst granted [Basler's] requests to take various days off work to enlist in the military" was controverted. Of course, this cannot be.

Indeed, the paragraphs plaintiffs cited from their declarations span three or more pages, and exhibit A—cited in its entirety to dispute each fact—covers 85 pages. Moreover, paragraph 3 from each plaintiff's declaration—itself more than two pages long—essentially restates the complaint's allegations, covering facts relating to all of the plaintiffs' claims. Plaintiffs'

responses to S&F's form interrogatories do the same.[6] Thus, for each disputed fact, the court would have had to wade through those pages and statements to determine what specific statements purportedly demonstrated the particular fact was controverted, and—as plaintiffs did not describe it—the nature of the dispute.

In contrast, when defendants cited to paragraph numbers from declarations in support of certain material facts,[7] the cited paragraphs were only a few lines each. More importantly, the declarant covered a discrete subject or issue in each paragraph of the declaration, such as laying a foundation to authenticate an exhibit or describing a particular event. Thus, the trial court could understand exactly what evidence defendants contended supported their stated material facts. Accordingly, we see no abuse of discretion in the court's finding that defendants' separate statement was sufficient but plaintiffs' was not.

b.    *Defendants' statement of material facts is sufficient*

Plaintiffs also contend the trial court abused its discretion by not denying defendants' motion on the ground their separate statement did not state material facts. Plaintiffs argue defendants' restatement of allegations in the complaint and statements from plaintiffs' deposition testimony are not material

---

[6]    Nor is plaintiffs' counsel's declaration specific. It argues defendants' motion improperly relies on plaintiffs' allegations, hearsay statements, and inaccurate and incomplete statements from their depositions, and states their attached discovery responses contain admissible evidence of their claims.

[7]    Defendants cited to the relevant page and line numbers from the plaintiffs' depositions.

18

facts. We disagree. As the trial court stated, the complaint's allegations frame the case. Indeed, "[i]t is the allegations in the complaint to which the summary judgment motion must respond." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258; *Lackner v. North* (2006) 135 Cal.App.4th 1188, 1201-1202, fn. 5 ["the pleadings 'delimit the scope of the issues' to be determined and '[t]he complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action' "].) Accordingly, defendants restated plaintiffs' allegations as undisputed material facts to demonstrate plaintiffs could not establish a prima facie case even if those alleged facts were true.

The events plaintiffs testified occurred and their beliefs about them also are material facts on which defendants could support their motion. True, defendants include many discrete facts taken from plaintiffs' deposition testimony. But unlike the moving party in *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 105-106, defendants did not frame the undisputed material fact as the fact that one of the plaintiffs *testified* to it. Rather, defendants stated the event or fact— or the individual's knowledge or belief about the event or fact— and cited to that individual's testimony about it as evidence. (See *ibid.* [defendant's undisputed material fact that two of its employees " 'stated that Plaintiff followed them out of the store, telling them that he had moved Sandy Juarez out of the way by lightly/gently pushing her aside,' " was not a material fact, but evidence of a material fact—plaintiff's admission about the confrontation].) Moreover, the plaintiff in *Reeves* controverted the purported undisputed material fact through his declaration— something plaintiffs failed to do here. (*Id.* at p. 106.) The *Reeves* court thus concluded defendant had "attempt[ed] to circumvent

19

that conflict by stating the supposed 'fact' in an attributive form," given it was "indisputably true" the witness gave that testimony. (*Id.* at pp. 105-106.)

    c.    *Defendants' reliance on Kirst's declaration did not require the trial court to deny their motion*

Plaintiffs contend defendants' reliance on Kirst's declaration to establish she did not discriminate against them and lacked a discriminatory intent *required* the trial court to deny their motion. Plaintiffs are wrong. Section 437c, subdivision (e) gives the court *discretion* to deny a motion for summary adjudication "if the *only* proof of a material fact offered in support of the [motion] is an affidavit or declaration made by an individual who was the sole witness to that fact; or if a material fact is an individual's state of mind, or lack thereof, and that fact is sought to be established solely by the individual's affirmation thereof." (Italics added.) Plaintiffs do not explain how the trial court abused its discretion by refusing to deny defendants' motion under this subdivision. Moreover, defendants *also* relied on plaintiffs' deposition testimony to establish Kirst did not discriminate against them or have a discriminatory intent.

**3.**    ***Defendants met their burden to show no triable issue of fact existed and they were entitled to adjudication in their favor on plaintiffs' claims***

    a.    *Standard of review and process*

On appeal from a summary adjudication, "we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) "[W]e must view the evidence in

20

a light favorable to plaintiff[s] as the losing parties [citation], liberally construing [their] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff[s'] favor." (*Saelzler v. Advanced Group* 400 (2001) 25 Cal.4th 763, 768.) We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

A defendant is entitled to summary adjudication upon a showing that a plaintiff's cause of action has no merit. (§ 437c, subds. (a), (f)(1).) "The defendant meets this burden with respect to each cause of action by establishing undisputed facts that negate one or more elements of the claim or state a complete defense to the cause of action." (*Amis v. Greenberg Traurig LLP* (2015) 235 Cal.App.4th 331, 337; § 437c, subd. (p)(2).) Alternatively, a defendant may meet its burden of showing that an essential element of plaintiff's claim cannot be established by presenting evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence. That evidence may consist of the deposition testimony of the plaintiff's witnesses, the plaintiff's factually devoid discovery responses, or admissions by the plaintiff in deposition or in response to requests for admission. (*Amis*, at pp. 337-338; see also *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 749 [plaintiff's deposition testimony may be used to shift the burden of proof and grant

21

a motion for summary judgment].)[8]  Once the defendant has
made such a showing, the burden shifts to the plaintiff to show

---

[8]  Plaintiffs contend defendants failed to meet their burden
by relying on plaintiffs' deposition testimony.  A defendant
may rely on a plaintiff's admissions made at deposition to show
a claim cannot be proved.  Whether a plaintiff's deposition
testimony does so, of course, depends on what was said.  (*Villa v.
McFerren, supra*, 35 Cal.App.4th at p. 749.)  Deposition testimony
is evidence that is weighed and considered with other evidence.
(*Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510,
1522.)  Plaintiffs challenge defendants' reliance on the deposition
excerpts only generally, arguing the cited testimony fails to
demonstrate "an unequivocal lack of proof and an inability to
reasonably obtain proof."  (Emphasis omitted.)  They cite to
defendants' separate statement in its entirety—more than 250
pages—in support of this contention and do not identify which
specific deposition excerpts are lacking or how the specific
testimony fails to demonstrate plaintiffs' inability to establish
one or more elements of their claims.  In essence, plaintiffs ask
this court " 'to make an independent, unassisted study of the
record in search of error.' "  (*Guthrey v. State of California*
(1998) 63 Cal.App.4th 1108, 1115 (*Guthrey*).)  This we will not do.
We thus do not consider this contention.  (*Abdulkadhim, supra*,
53 Cal.App.5th at p. 301 [review is limited to issues adequately
briefed]; *Guthrey,* at p. 1115 ["It is the duty of counsel to refer
the reviewing court to the portion of the record which supports
appellant's contentions on appeal.  [Citation.]  If no citation
'is furnished on a particular point, the court may treat it as
waived.' "]; see also *Bernard v. Hartford Fire Ins. Co.* (1991) 226
Cal.App.3d 1203, 1205 [party has a duty to provide exact page
citations; block page reference precluded appellate court from
"adequately evaluat[ing] *which facts* the parties believe support
their position"].)

a triable issue of material fact exists.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.)

   b.   *Plaintiffs' evidentiary objections*

Plaintiffs contend the trial court erroneously overruled their objections to defendants' supporting declarations and attached exhibits.  Those declarations include: Diaz, S&F's labor relations director and custodian of records for personnel files; human resources managers Quigley and Castro; and Kirst. Plaintiffs objected to the declarations in their entirety and to virtually every line in them.  The trial court overruled each of plaintiffs' 86 objections.  Plaintiffs argue the trial court strictly construed their evidence and liberally construed defendants' declarations when it should have done the opposite.

Other than directing us to the Evidence Code, plaintiffs do not explain how the court abused its discretion in overruling specific objections, much less how the purported error was prejudicial.  They simply contend the trial court "refus[ed] to apply the Evidence Code."  Citing to the Diaz, Castro, Quigley, and Kirst declarations in their entirety, plaintiffs merely restate the objections they made in the trial court: the declarations "consisted of hearsay, were not within the personal knowledge of the declarants, were irrelevant, required speculation, or were improper legal opinions or conclusions."  Again, plaintiffs leave it to this court to parse through each of their 86 evidentiary objections and guess as to why they contend the statements are hearsay and do not fall within a hearsay exception, are not within the declarant's personal knowledge, or are irrelevant, or how they required speculation or constituted an improper legal conclusion.  Similarly, plaintiffs restate the objections they made to the exhibits attached to the declarations as "hearsay,

23

unauthenticated, and lacking foundation"—again, without saying why.

It is plaintiffs' responsibility to support their contentions of error by citation to the record, supporting authority, *and* reasoned analysis. (*Abdulkadhim, supra*, 53 Cal.App.5th at p. 301; *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287 (*City of Santa Maria*) [reviewing court "may disregard conclusory arguments that . . . fail to disclose the reasoning by which the appellant[s] reached the conclusions" they want the court to adopt].) Plaintiffs have not met their burden to demonstrate the trial court's overruling of their objections was an abuse of discretion and reversible error. (Evid. Code, § 353 [evidentiary error must result in "miscarriage of justice" to justify reversal]; *Denham, supra*, 2 Cal.3d at p. 564; *Guthrey, supra*, 63 Cal.App.4th at p. 1115.)

    c.    *Plaintiffs fail to demonstrate the trial court erred when it shifted the burden to them*

Instead of addressing each cause of action the trial court summarily adjudicated, plaintiffs argue defendants failed to shift the burden to them at all. Again citing to defendants' separate statement in its entirety, plaintiffs argue the stated facts fail "to show that Appellants could not establish **each element** of Appellants' *prima facie* case for each cause of action" defendants' motion challenged. (Emphasis in original.) Plaintiffs misapprehend defendants' burden. Defendants had to demonstrate plaintiffs could not establish *one* element of each cause of action, not *each* element.

Plaintiffs merely argue defendants' separate statement was not supported by competent evidence, again invoking their general objections that the supporting declarations and

exhibits—referenced in their entirety—were self-serving and consisted of hearsay and legal conclusions.  We already have said plaintiffs failed to demonstrate the trial court erred in overruling their evidentiary objections.  Moreover, plaintiffs' evidentiary objections included no objections to the deposition testimony excerpts on which defendants relied.  And, although plaintiffs declare that each plaintiff corrected his or her deposition testimony, no plaintiff attached any corrected testimony or indicated what specific uncorrected testimony defendants relied on.[9]

Plaintiffs also cite cases for the familiar principle that, on a motion for summary judgment, the trial court must strictly construe the moving party's evidence and draw all reasonable inferences from the evidence in the light most favorable to the opposing party.  Plaintiffs then conclusorily assert the court erred because it "disregarded the patent defects within [the] moving papers, and supporting [d]eclarations, and improperly shifted the burden of proof to [plaintiffs]."

Plaintiffs' general objection to defendants' evidence as inadequate and defective does not demonstrate the trial court erred in finding defendants presented sufficient evidence to shift the burden to plaintiffs.  Plaintiffs do not direct our attention to any specific evidence or inferences we can draw from that

---

[9]     Plaintiffs declare the deposition excerpts defendants cite in support of the stated material facts "misstate" their testimony, "are not accurate and do not contain [their] complete answers," and do not include changes they made to the deposition transcripts.  They do not say what part of their testimony is misstated, inaccurate, or incomplete.

evidence to argue how it does not establish plaintiffs' inability to prove their claims. (*City of Santa Maria, supra,* 211 Cal.App.4th at pp. 286-287 ["to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record"].) Nor do we agree with their assertion that the trial court assumed defendants' moving papers were sufficient. At the hearing on the motion, the court explicitly stated it had looked at defendants' motion and separate statement and found both sufficient and supported by competent evidence.

As plaintiffs have failed to meet their burden to affirmatively show error, we conclude the trial court properly found defendants met their initial burden on summary adjudication as to each of plaintiffs' causes of action. (*Denham, supra,* 2 Cal.3d at p. 564.)

        d.    *Plaintiffs do not challenge the trial court's ruling that they in effect failed to provide an opposing separate statement*

After finding defendants presented sufficient evidence to demonstrate plaintiffs' causes of action at issue had no merit, the trial court next had to determine if plaintiffs showed a triable issue of material fact existed as to any of their claims. (*Aguilar, supra,* 25 Cal.4th at p. 850.) The trial court's minute order states defendants' motion "is granted on the grounds fully reflected in the notes of the official court reporter." The reporter's transcript in turn shows the court ruled, "The disputed separate statement was not compliant with the rules of court. . . . Even if the court were to permit a new separate statement . . . to be issued to comply with the rules of court, nevertheless, each of those declarations are defective and none of them even contain,

26

for the most part, the material that counsel indicates would dispute these issues. So the separate statement is as if I did not get an opposing separate statement at all. So the court is going to grant the motion for summary adjudication . . . ."

Accordingly, the court found plaintiffs did not meet their burden to demonstrate the existence of a triable issue of fact because they failed to provide an adequate separate statement. Nowhere in plaintiffs' opening brief, however, do they contend the trial court erred when it granted defendants' motion after treating plaintiffs' separate statement "as if [it] did not get an opposing separate statement at all."[10] Nor do they challenge the trial court's evidentiary ruling that their declarations were

---

[10] As we have discussed, plaintiffs challenged the trial court's finding that defendants' separate statement was sufficient when it had found plaintiffs' was not. Plaintiffs' opening brief does not contend the trial court abused its discretion by granting summary adjudication based on plaintiffs' failure to submit a proper separate statement. When an opposing party fails to file a responsive separate statement, the trial court has discretion either to grant the motion for summary judgment or adjudication based on the absence of the separate statement or to continue the motion and allow the opposing party to file a proper separate statement. (*Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 827-828 [abuse of discretion applies to decision to grant summary judgment " 'because the opposing party failed to comply with the requirements for a separate statement' "].) And, plaintiffs did not file a reply brief to address the issue even after defendants argued they had forfeited it.

defective.[11]  Plaintiffs thus have forfeited appellate review of these issues.  (*Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487, fn. 4 ["appellant's failure to raise an argument in the opening brief waives the issue on appeal"].)

" 'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief.  [Citations.]  Issues not raised in an appellant's brief are deemed waived or abandoned." ' " (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554-555.)  The court's finding that plaintiffs'

---

[11]     The trial court ruled plaintiffs' declarations were defective in response to defendants' objection that the verifications plaintiffs signed showed they lacked personal knowledge on the matters stated in their declarations.  Although each plaintiff declared, "All facts contained herein are of my own personal knowledge and if called upon to testify to same, I could competently do so," each verification each plaintiff signed under penalty of perjury showed otherwise.  In the verification, each plaintiff declared, "I, or my attorney, have read and reviewed [the declaration] . . . .  I have authorized the preparation of the above by my attorneys, and have provided them with assistance such that [the] contents are based on my knowledge, or information and belief."  (See § 437c, subd. (d) ["declarations shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the . . . declarations"]; *Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1124 [declarations based on information and belief "are insufficient to satisfy the burden of either the moving or opposing party on a motion for summary judgment or adjudication"].)  The verifications attached to plaintiffs' interrogatory responses include identical language.

28

separate statement was fatally deficient was the basis on which it granted defendants' motion after finding defendants met their initial burden.  Because plaintiffs—as the appellants—have "the burden to affirmatively show the trial court erred," plaintiffs' "failure to address" the court's ruling on its separate statement "requires us to affirm the court's order."  (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72; *Golden Door,* at p. 558 [appellant's "failure to address" court's ruling in opening brief "compels the conclusion the trial court's ruling on that point must be affirmed"]; see also *State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 836 ["Where the trial court based its judgment on the determination that petitioners failed to exhaust their administrative remedies, petitioners could not simply overcome the presumption of correctness by ignoring that issue in their opening briefs."].)

Accordingly, we affirm the November 7, 2016 order granting defendants' motion for summary adjudication.

4. ***The trial court did not err when it sustained defendants' demurrer***

Defendants contend plaintiffs forfeited their challenge to the court's order sustaining defendants' demurrer because they did not include the trial court's order or reporter's transcript in the appellate record.  Because we review an order sustaining a demurrer de novo (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*)), and the record is otherwise complete, we can determine if the court erred.

In our de novo review, we assume the truth of the complaint's properly pleaded or implied factual allegations, but not contentions, deductions or conclusions of fact or law.  (*Blank, supra*, 39 Cal.3d at p. 318.)  We determine if the alleged facts

29

are "sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)  We review the trial court's denial of leave to amend for abuse of discretion.  We decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  The burden of proving that reasonable possibility is squarely on the plaintiff. (*Blank*, at p. 318.)

      a.    *The SAC's fraud causes of action*

      The elements of a fraud cause of action are: " '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' "[12]  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)  "Fraud must be pled specifically—that is, a plaintiff must plead *facts* that show with particularity the elements of the cause of action."  (*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1090, citing *Lazar*, at pp. 638, 645.)  In other words, plaintiffs must plead facts that " ' "show how, when, where, to whom, and by what means the representations were tendered." ' "  (*Lazar*, at p. 645.)  Moreover, plaintiffs' "burden in asserting a fraud claim against a corporate employer" such as S&F is "even greater."  (*Ibid.*)  Plaintiffs "must 'allege the names of the persons who made the allegedly fraudulent

---

[12]    The elements for negligent misrepresentation are the same except the representation need only be made without a reasonable ground for believing it to be true.  (*Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217, 231.)

30

representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' " (*Ibid.*)

Plaintiffs' SAC fails to meet this heightened pleading standard. The SAC's causes of action for intentional misrepresentation, negligent misrepresentation, and concealment all are based on the same alleged statements on which plaintiffs based their contract causes of action: that S&F would give them available work hours before giving them to less senior or temporary employees, there would be open postings for other positions, plaintiffs would have equal ability to apply for other positions and promotions, and plaintiffs "would be allowed to work regardless of their color, race and ethnicity, national origin, religion and gender." As to who made these representations to plaintiffs, the SAC merely alleges "Defendants and Does 1 through 100, through their agents/or employees, names unknown, manager level and higher" made the alleged "promises."

Plaintiffs did not allege who made these statements, much less facts showing their authority to make the alleged promises. Nor do plaintiffs allege whether the same person or different people made the statements to each plaintiff—whom the SAC alleges were hired at different times between 2001 to 2009.

Moreover, plaintiffs do not allege *where* the representations were made, and they allege only general time periods as to *when* they were made. For example, Berganza alleges S&F hired her in May 2001. She then alleges she entered into an oral contract with "Defendant" and describes the same promises on which plaintiffs' fraud claim is based. Each plaintiff makes similar allegations.

These allegations are not sufficient to withstand demurrer. (Cf. *Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 838-839 [fraud allegations sufficiently pleaded where plaintiff alleged dates, time, and names of individuals who initiated communications, as well as facts providing a basis for the allegation that they were authorized to act on defendant's behalf].) The rule that less specificity is required when " 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy' " does not apply here. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217.) Plaintiffs alleged the representations were made directly to them orally. Therefore, plaintiffs—rather than S&F—had superior knowledge as to who made the alleged oral promises to them, when, and in what context. The trial court did not err when it sustained defendants' demurrer to the SAC's causes of action for intentional and negligent misrepresentation.

Plaintiffs' cause of action for concealment fares no better. To state a claim for fraud based on concealment, the defendant must have intentionally concealed or suppressed a material fact and must have been under a duty to disclose the fact to the plaintiff. (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 870.) The SAC did not allege what material facts defendants failed to disclose. Rather, plaintiffs asserted the same allegations for their concealment cause of action as they pleaded in support of their misrepresentation causes of action. Plaintiffs first allege defendants made the same promises as in their other fraud claims without intending to fulfill them. They then allege—again, as they did in the other two fraud claims—

32

"[a]s a result of the false representation of material terms concerning Plaintiffs' employment, such material facts were not disclosed by Defendants." The allegation is nonsensical. One cannot both reveal a fact and conceal it. The court properly sustained defendants' demurrer on this cause of action.

      b.    *The SAC's cause of action for wrongful conduct in violation of public policy*

The SAC purported to plead a cause of action for "wrongful conduct in violation of public policy." Plaintiffs allege they "were denied work" in violation of public policy. Plaintiffs cite no authority that recognizes such a cause of action. Instead, they cite authority recognizing a cause of action for wrongful *termination* in violation of public policy. (*Collier v. Superior Court* (1991) 228 Cal.App.3d 1117, 1121; see *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 931-932 (*Ross*) [cause of action for wrongful termination in violation of public policy is based on exception to at-will employment that "an employer may not discharge an employee for a reason that violates a fundamental public policy of the state"].) Construing the SAC liberally to plead a cause of action for wrongful *termination* in violation of public policy, at most, only Basler could assert such a claim. (See *Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 945 [dismissal of claim for wrongful discharge in violation of public policy based on harassment proper where employee did not allege harassment "resulted in a constructive discharge or otherwise contributed to her termination"].) The trial court thus did not err in dismissing this claim as to Acuna, Berganza, Gerber, and Ibal.

We consider whether the SAC sufficiently alleged a cause of action for wrongful termination in violation of public policy

33

as to Basler. To support this claim, the violated policy must be supported by either constitutional or statutory provisions; must be "public" in the sense that it inures to the benefit of the public rather than serving merely the interests of the individual; must have been articulated at the time of the discharge; and must be "fundamental" and "substantial." (*Ross, supra*, 42 Cal.4th at p. 932.)

The SAC alleged S&F terminated Basler's employment in violation of fundamental public policies. It lists several statutes, including FEHA and Military and Veterans Code section 394 (section 394), purportedly containing those policies. The SAC alleged S&F terminated Basler after he took military leave "in violation of the law." Except for section 394, the SAC did not allege how S&F violated any of the policies stated in the listed statutes when it allegedly terminated Basler's employment.[13] The SAC sufficiently alleged how Basler's wrongful termination relates to section 394, however, by stating S&F violated that statute's prohibition against terminating employees because they took military leave or because of their military status.[14]

---

[13] The SAC alleged S&F violated FEHA, but the claim is based on S&F's alleged wrongful employment practices motivated by "color, race and ethnicity, national origin, religion and gender," not military status.

[14] Section 394 prohibits an employer from discriminating against members of the military in the "terms, conditions, or privileges" of their employment because of their membership or service, and from terminating a military member's employment because of the performance of military duty or training. (§ 394, subds. (a), (d).)

34

Nevertheless, assuming the SAC sufficiently alleged a cause of action for wrongful *termination* in violation of public policy based on section 394, Basler cannot demonstrate prejudicial error.  (Cal. Const., art. VI, § 13.)  We have concluded plaintiffs failed to establish the trial court erred when it granted summary adjudication on plaintiffs' claims—including, Basler's section 394 claim.  Thus, as with all of their claims subject to defendants' motion, plaintiffs did not show the trial court erred when it found defendants met their initial burden that Basler's section 394 claim had no merit.  As a result, Basler's claim for wrongful termination in violation of public policy—based on the same underlying conduct as his section 394 claim—could not have survived defendants' motion for summary adjudication. The same evidence defendants presented in support of their motion against Basler's section 394 claim would have applied to his wrongful termination claim.  (Cf. *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1194, fn. 15 [wrongful termination in violation of public policy against retaliation failed where it was based on same allegations as failed FEHA retaliation claim]; *Featherstone v. Southern California Permanente Medical Group.* (2017) 10 Cal.App.5th 1150, 1169 ["if an employer did not violate FEHA, the employee's claim for wrongful termination in violation of public policy necessarily fails"].)  Likewise, plaintiffs' responsive separate statement—that the trial court found defective—would have been no different.

     c.    *Plaintiffs failed to show the court abused its discretion in denying leave to amend*

Without a reporter's transcript, we must presume plaintiffs did not proffer additional facts at the demurrer hearing entitling them to leave to amend.  (See *Foust v. San Jose Construction Co.,*

*Inc.* (2011) 198 Cal.App.4th 181, 186-187 [describing situations where prejudicial error could not be affirmatively shown without reporter's transcript].)  Nor do they offer additional facts now. We will not "use our imagination as to facts [plaintiffs] might allege if given the opportunity." (*Gould v. Maryland Sound Industries, Inc*. (1995) 31 Cal.App.4th 1137, 1153.)

## DISPOSITION

The judgment is affirmed.  Respondents are to recover their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.


We concur:



EDMON, P. J.



LAVIN, J.